# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3288 | **DATE** | 5/21/2003 |
| **CASE TITLE** | Gendelman et al vs. Glenbrook North High School et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **ENTER MEMORANDUM OPINION:** We deny the motion for a TRO.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | MAY 21 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | SCT courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIAT GENDELMAN and TAYLOR WESSEL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> GLENBROOK NORTH HIGH SCHOOL and ) <br> BOARD OF EDUCATION NORTHFIELD ) <br> TOWNSHIP SCHOOL DISTRICT 225, ) <br> ) <br> Defendants. ) | 03 C 3288 <br><br> DOCKETED <br> MAY 2 1 2003 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Plaintiff Liat Gendelman ("Gendelman") and Taylor Wessel's ("Wessel") motion for a temporary retraining order. For the reasons stated below we deny the motion.

## BACKGROUND

On May 4, 2003, certain members of the junior and senior classes at Glenbrook North High School met for the annual "powder puff" football game. Unfortunately for all of the parties before me and countless others, the activities which took place cannot be described in powder puff terms or as some sort of game. Much of what ensued has been captured on videotape and has been played and



replayed on public airwaves for all the world to see. The viewing has been an unpleasant and distasteful experience.

The gathering took place on a Sunday in the Cook County Forest Preserve, Chippilly Woods, neither on school grounds nor during school hours. Nevertheless, for all that the record presently discloses, all in attendance were students at Glenbrook North or had some relationship with the school. At this gathering, the juniors were subjected to a variety of offensive and physical contacts, including violence, at the hands of the senior students. The specifics of the conduct will undoubtedly be described in greater detail another day; suffice it to say it was hazing and harassment of an extreme sort. The alignment of all of the participants, both victims and oppressors alike, was based on the participant's status at school. Attendance at Glenbrook North was central to the event, and class standing essential to the roles played. As a result, the Defendants had an intrinsic interest in the activities which took place and have a necessary interest in the consequences which may follow. A trail of injury and damage has been left among many, and it is not only the participants who have suffered. Many innocents have suffered, and the anguish of all of the parents affected is palpable.

The Plainitffs Gendelman and Wessel admit that they were present on May 4 at the forest preserve. On May 12, 2003, Gendelman and Wessel were charged by Defendants with: 1) violating the school handbook rules prohibiting hazing and

harassment, 2) assault and battery, and 3) membership in a secret society in violation of the school code. Gendelman and Wessel were pulled from their classes and brought before different school administrators. Each was provided a document listing charges against them and asked to respond to the charges. Defendants claim that Wessel admitted to the administrator that she poured substances on fellow students. Defendants also claim that Gendelman admitted to the administrator that she smeared dog food on her fellow students. Each student was also provided with a letter to their parents informing the parents that their daughter had been suspended for ten days. Gendelman and Wessel contend that they were not told on May 12 any specific facts that Defendants relied upon to support the charges against them.

On May 15, 2003, Gendelman and Wessel were given an opportunity to respond to the charges in hearings before school administrators. At the hearing Defendants played short clips from a videotape taken at the event. One segment at the May 15 hearing showed Gendelman pouring a substance over another individual's head from a cup. Another clip showed Gendelman squirting a substance from a squirt bottle onto the head of another person. A segment at Wessel's May 15 hearing showed Wessel pouring a substance from a bottle onto the head of a girl kneeling before her and slapping a girl on the head. Gendelman and Wessel filed a complaint seeking an injunction ordering Defendants to vacate their

ten day suspensions. The current motion before us asks us to issue a temporary restraining order.

## DISCUSSION

In deciding whether to grant a temporary restraining order ("TRO") a court must consider: 1) whether there is a likelihood of success on the merits, 2) whether there is no adequate legal remedy, 3) whether the Plaintiffs will suffer irreparable harm if the TRO is not issued, 4) the public interest, and 5) how the various competing interest compare utilizing the "sliding scale" approach. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Bernina of America, Inc. v. Fashion Fabrics International, Inc.*, 2001 WL 128164, *1 (N.D. Ill. 2001)(stating that the standard for the issuance of a temporary restraining order is the same standard that is applied for the issuance of a preliminary injunction).

The Plaintiffs first challenge to the orders of suspension is the lack of the Defendants' authority to impose sanctions of any kind against the participants for the reasons that this was not a school sanctioned or sponsored event, it did not take place on school property or during school hours, and the school has no legal interest in the events of the day. Reliance is had on a section of the school handbook which treats jurisdictional matters.

That same school handbook, however, expressly prohibits hazing and harassment engaged in by any student district wide and is not limited to school

sponsored events. In addition, given the egregious nature of some of the conduct depicted in the videotapes, the nexus of the event to Glenbrook North High School and the fundamental relationship that all of the participants had to the school, to hold that a school was powerless to act in these circumstances is patently absurd. When one set of students sets to prey upon another set of students in a ritualistic exercise, the consequences of which will necessarily effect the students' relationships while they are all in attendance at the some school, the ability of school officials to act in the area and discipline those who went beyond the pale of tolerable student behavior is manifest. Today's juniors, who will be tomorrow's seniors, may well feel emboldened when it comes their turn next year. The school has a right, and a duty, to retard the growth of incivility among its students. We believe and find the school had authority to impose the suspensions that the Plaintiffs suffered.

Likelihood of Success on the Merits

Plaintiffs argue that there is a strong likelihood that they will succeed on the merits. They argue that the initial hearings on May 12 violated their rights to due process because they were not informed of the specific facts that Defendants relied upon to support the charges. Plaintiffs also argue that they did not understand the meaning of the charges provided to them at the May 12 hearings and that a reasonable person would not know what types of activity were referred to by the

charges. Plaintiffs were given a copy of the charges against them and were given an opportunity to respond at the May 12 hearings. The charges, particularly the charge of hazing, made it reasonably clear what types of activity that the Plaintiffs were charged with.

Plaintiffs also argued orally that the hearing on May 15 was of no legal consequence because in regards to a suspension of ten days or less a hearing provided after the suspension is always insufficient to meet the due process requirements. To satisfy the due process requirements a student must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). However, it is not always necessary for a school to provide a full blown evidentiary hearing at the time of suspension to satisfy the due process requirements. *Id.* Although generally the hearing should occur at the time of removal from school, the hearing can occur "as soon as practicable" after the removal from school if the student poses "an ongoing threat of disrupting the academic process . . . ." *Id.* at 582-83. At the time of the suspension the student must be given notice of the charges against him and there must at the very least be some sort of "an informal give-and-take between student and disciplinarian, preferably prior to the suspension . . . ." *Id.* at 583-84.

*See Martin v. Shawano-Gresham School Dist.*, 295 F.3d 701, 705-07 (7th Cir. 2002)(holding that *Goss* due process requirements were met where the assistant principal orally suspended student and noting that assistant principal informed student of the charges and gave the student an opportunity to tell her side of the story)(stating additionally that the process required by *Goss* is "minimal" and stating that "[t]he Constitution does not require pre-suspension parental notification or a pre-suspension hearing."); *Smith v. Severn*, 129 F.3d 419, 428 (7th Cir. 1997)(referring to *Goss* as "the landmark decision governing procedural due process claims in the context of high school suspensions."); *Lamb v. Panhandle Cmty. Unit School Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987)(holding that *Goss* requirements were met and noting that the principal and student informally discussed incident, that the student admitted his guilt, that the student knew what school rule he was accused of breaking, and that the student was given an opportunity to respond to the charge). In this case there was sufficient notice of the charges given to Plaintiffs at the time of suspension and a sufficient "give-and-take" between Plaintiffs and Defendants.

Plaintiffs insist in their complaint that they "did not engage in any . . . offensive behavior at the May 4, 2003 'powder puff' event," and argue that "[n]one of the videotaped segments depicted [the plaintiffs] engaging in any acts of . . . offensive behavior." Plaintiffs continued to insist orally that they were not guilty

of hazing. The transcripts of the May 15, 2003 hearings reflect that the Plaintiffs were shown videotape segments in which Plaintiffs poured substances onto the heads of kneeling persons in front of them. One segment showed Wessel slapping a girl on the head. The Plaintiffs were allowed to have counsel with them at the May 15 hearings. They were allowed to present any evidence that they wished and were allowed to speak on their own behalf at the May 15 hearings. As such, they were afforded an opportunity to be heard, the protection which is afforded by the Constitution. Additionally, the Plaintiffs were given the opportunity to remain at the hearing office to view all of the videotapes in their entirety, notwithstanding that only the portions of the tapes relied on by the Defendants for the suspensions of each of the Plaintiffs was shown at the respective hearings.

Although much is made of the fact that the Plaintiffs were not permitted to preview the evidence the Defendants intended to present at the May 15, 2003 hearing, there is no requirement, Constitutional or otherwise, that requires such disclosure. A review of the hearing transcript in each Plaintiff's case supports the conclusion that there was an evidentiary basis for the suspensions imposed. The clips of the videotapes played at the hearing irrefutably established instances of participation by each Plaintiff in a gathering gone amok.

For the reasons described above, we find that the Plaintiffs have failed to demonstrate any likelihood of success on the merits.

Irreparable Harm

Although we find against Plaintiffs on the likelihood of success standard, as well as the balance of harms and public interest criteria, it is appropriate to address the claim of irreparable harm. Plaintiffs allege that they will suffer irreparable harm if we do not issue a temporary restraining order because: 1) they will not be able to attend college, 2) they will be expelled and not be able to graduate, and 3) their reputation and standing in the community will be damaged.

The only relief presently being sought is the reversal of a ten day suspension order. We think it highly speculative that being unable to graduate or attend college will flow from a short-term suspension. To that extent, no irreparable harm has been shown.

The more serious issue, however, is any ensuing expulsion order which may follow on the heels of a short term suspension order. In that eventuality, the risk of losing the opportunity to attend college becomes a pronounced consideration. And if a later promulgated expulsion order is made easier by the issuance of the suspension order, then the harm may well be irreparable, if not irreversible. In such an instance, the Plaintiffs contentions must be more heavily weighed.

A companion argument made by the Plaintiffs bears on the issue of fundamental fairness. It was asserted that these "powder puff" events have been a staple at Glenbrook North for years and that school officials, well aware of the

events taking place, have never lifted a finger to prevent them, punish anyone for participating in them, or otherwise concluding that they constituted improper acts of harassment or hazing. There is something to be said for that contention, and were we being asked to pass on expulsion orders rather than suspension orders, the analysis may differ.

In light of our conclusion that the inability to graduate or attend college is not a probability or likely to result from a suspension order, we need not be detained any longer on this prong of the injunction criteria.

Of additional comfort to the Plaintiffs is the availability of an expulsion hearing in which their positions may be presented and given good faith consideration prior to the imposition of sanctions which may well have far reaching consequences to the students involved. The mistakes of youth, even ones as serious as some of those depicted on the videotapes, need not be a bar to a future of productive adulthood.

Public Interest

The public interest will not be furthered by the proposed TRO. The public has an interest in keeping school environments safe and free from persons or events that will impede the learning process. In order to accomplish this goal schools must be allowed to discipline students when discipline is warranted. The powder puff event that Plaintiffs participated in involved egregious conduct. The public interest

is furthered by allowing the school to punish them. For this court to intervene in Defendants' affairs via a TRO will impede the school's ability to discipline its students and effectively maintain a safe and healthy school environment.

Balancing of Interests

It is highly unlikely that Plaintiffs will succeed on the merits. Plaintiffs have not presented any concrete threats that would lead us to believe that the suspensions are likely to cause any irreparable harm to Plaintiffs. Finally, the public interest will not be served by granting the TRO. Thus, the various interests involved in our TRO analysis clearly weigh in favor of Defendants.

## CONCLUSION

Based on the foregoing analysis we deny the motion for a TRO.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: May 21, 2003